25CA1581 Peo in Interest of DeHerrera 11-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1581
Pueblo County District Court No. 24MH183
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Chanel DeHerrera,

Respondent-Appellant.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE HARRIS
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 6, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Schafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Respondent, Chanel DeHerrera, appeals the district court's order authorizing the staff at Health Solutions to medicate her involuntarily. We affirm.

## I.     Background

¶ 2     DeHerrera has a long history of psychosis, including multiple hospitalizations over the last twenty years. She was diagnosed with schizoaffective disorder, bipolar type, and has experienced psychotic symptoms including hallucinations and delusions — believing at times that she was pregnant (when she was not) or that her family members were trying to kill her.

¶ 3     Based on the district court's findings that DeHerrera is mentally ill, gravely disabled, and in need of extended long-term care and treatment, she was certified for long-term mental health treatment under section 27-65-110, C.R.S. 2025. Later, DeHerrera was certified for long-term mental health treatment on an outpatient basis under section 27-65-111, C.R.S. 2025. DeHerrera, with the assistance of counsel, also consented to court-ordered treatment with various antipsychotic and mood stabilizing medications.

¶ 4    In August 2025, before the previous medication order expired, DeHerrera's psychiatrist, Dr. Arlene Shanklin, petitioned the district court to review DeHerrera's refusal of treatment. This time, DeHerrera objected.

¶ 5    The district court held an evidentiary hearing, at which Dr. Shanklin and DeHerrera testified. Dr. Shanklin described DeHerrera's disorder and accompanying symptoms. She also described the requested medications, explained their possible side effects, and opined that they were necessary to treat DeHerrera's symptoms. DeHerrera testified that she believes she has a mental illness but provided conflicting testimony as to whether she was willing to take the requested medications. DeHerrera also testified about the side effects she has experienced from the requested medications.

¶ 6    The district court found that Dr. Shanklin had testified "credibly and persuasively," and that the People had proved all four elements of the test set forth in *People v. Medina,* 705 P.2d 961, 973 (Colo. 1985), for each of the requested medications except olanzapine and atropine sulfate. Accordingly, the court granted the petition in part and authorized the involuntary administration of

2

Invega Sustenna, Trileptal, clozapine (both the 100mg tablet and the 200mg tablet), and risperidone to DeHerrera against her will.

## II.    Applicable Law and Standard of Review

¶ 7      A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to themself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.  *Id.*

¶ 8      Application of the *Medina* test involves mixed questions of fact and law.  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We defer to the district court's factual findings if they have record support and review its legal conclusions de novo.  *Id.*  It is for the district court, as the fact finder, to determine the credibility of witnesses; the sufficiency, probative effect, and the weight of the evidence; and the

inferences and conclusions to be drawn from the evidence. *People in Interest of R.C.*, 2019 COA 99M, ¶ 7.

¶ 9    When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The testimony of the treating psychiatrist alone may suffice. *Id.* at ¶ 30.

### III.    Need for Treatment and Legitimate Interest in Refusing Treatment

¶ 10    DeHerrera contends that the evidence was insufficient to prove the fourth *Medina* element — that her need for the requested medications is sufficiently compelling to override her bona fide and legitimate interest in refusing to take them. We disagree.

¶ 11    In assessing this element, a court must first determine "whether the patient's refusal is bona fide and legitimate." *Medina*, 705 P.2d at 974. If it is, the court must then determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the

4

state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 12 The district court acknowledged that DeHerrera had bona fide and legitimate concerns about the side effects of the medications. DeHerrera has experienced excessive drooling and sedation from the medication, and she believes risperidone is causing her hair to fall out. But the court found that these concerns were outweighed by the state's legitimate interest in "preserving her life and health." In making this determination, the court cited DeHerrera's history of decompensation when not taking the requested medications.

¶ 13 The record supports the district court's findings. Dr. Shanklin opined that the failure to medicate DeHerrera would be more harmful than the risks posed by the requested medications. In support of this opinion, Dr. Shanklin testified that, without the requested medications, "historically, [DeHerrera] would decompensate" — she would "return to a florid psychosis," making her "more vulnerable in terms of people out in the community." Further, Dr. Shanklin expected that such decompensation would cause DeHerrera to "be a danger to herself by not caring for herself, and then a danger eventually to other people." Dr. Shanklin

5

explained that DeHerrera has had multiple hospitalizations because "she decompensates without the medication," and when this happens "she cannot function in the community." However, Dr. Shanklin testified that since DeHerrera has been on court-ordered medications, she has improved.

¶ 14   Dr. Shanklin acknowledged that the requested medications have potential adverse side effects. But Dr. Shanklin testified that while DeHerrera has experienced side effects, including excessive drooling and sedation, some of the most serious possible side effects have not been an issue for her. Regarding DeHerrera's complaint of hair loss, Dr. Shanklin disagreed that risperidone was the cause because DeHerrera raised this concern when she was not taking risperidone and hair loss is a side effect that has not been "directly pinned" to antipsychotic medication. Even still, Dr. Shanklin explained that she agreed to reduce DeHerrera's dose of risperidone to address this possible side effect. As to any possible new side effects, Dr. Shanklin explained that DeHerrera's care team would continue to monitor her, and that additional medications were available to treat any new side effects should they arise.

¶ 15     On appeal, DeHerrera maintains that the state's interest in treating her is "greatly diminished," based, in part, on the district court's finding that she is not a danger to herself or others. True, the court found that DeHerrera did not meet the statutory definition for danger to self or others under section 27-65-102(10)(a) and (b), C.R.S. 2025. But the court's findings in this regard pertained to the second *Medina* element, an element that DeHerrera does not contest on appeal. Moreover, as explained in *Medina*, while the dangerousness of the patient, as defined by statute, is "similar" to the considerations relevant in resolving the second *Medina* element, "[t]he dangerousness of the patient to himself or others is a matter for consideration in the initial certification determination." *Medina*, 705 P.2d at 973; *see* §§ 27-65-102, -109, -110, C.R.S. 2025. And DeHerrera's initial certification determination is not at issue in this appeal.

¶ 16     Nor are we persuaded by DeHerrera's argument that the state's interest in treating her is "greatly diminished" because she is being treated on an outpatient basis, and therefore, the safety of the institution is not a concern. The fourth *Medina* element requires a court to weigh the state's interests against the patient's interest in

refusing the medication. *Medina*, 705 P.2d at 974. And while *Medina* discusses the legitimate interests of the state both in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution, it does not mandate that both interests be applicable. *See id.* Rather, *Medina* recognizes that "the resolution of the treatment decision will vary with the circumstances of the case and that the particular weight to be accorded the competing interests involved is impossible to predetermine." *Id.*

¶ 17    Furthermore, unlike DeHerrera, the respondent in *Medina* was involuntarily committed to an inpatient facility. *Id.* at 963. Thus, for Medina, and respondents like him, the state's interest in protecting the safety of those in the institution is paramount. For respondents like DeHerrera, who are being involuntarily treated on an outpatient basis, the state's interests are distinct but not diminished. *See id.* at 974. In this case, the state has a legitimate interest in preserving DeHerrera's life and health and protecting the community. And given the very real concerns expressed by Dr. Shanklin that DeHerrera's health will decompensate without treatment with the requested medications, and that she could

eventually become a danger to others, the court found that her need for treatment was sufficiently compelling to override her bona fide and legitimate interest in avoiding the side effects she was experiencing. Because there is sufficient evidence in the record to support that finding, we must uphold it. *See R.K.L.*, ¶ 13.

¶ 18 Because DeHerrera does not challenge the district court's findings concerning the other *Medina* factors, we conclude the evidence was sufficient to support the involuntary medication order.

## IV. Disposition

¶ 19 The order is affirmed.

JUDGE JOHNSON and JUDGE SCHOCK concur.